IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>STEPHANIE JENSEN,<br><br>    Defendant.                       / | No. C 06-00556-2 CRB<br><br>**ORDER DENYING MOTION FOR NEW TRIAL** |

Defendant Stephanie Jensen moves this Court for a new trial, arguing that there are five justifications for overturning the jury's guilty verdict: (1) the Court's jury instruction for "willful" was erroneous; (2) the Books & Records statute is void for vagueness; (3) Congress precluded conspiracy liability for a Books & Records charge; (4) the Court failed to instruct the jury that, to be convicted, Jensen had to know the backdated documents affected Brocade's financial statements; and (5) there is a reasonable probability that newly discovered evidence would lead to a different outcome on retrial. For the reasons set forth below, Jensen's motion is DENIED.

**BACKGROUND**

On December 5, 2007, a jury convicted Stephanie Jensen of falsifying Brocade's books, records, and accounts in violation of 15 U.S.C. § 78m(b)(2)(A), id. § 78m(b)(5), id. § 78ff(a), and of conspiracy to falsify books, records, and accounts in violation of 18 U.S.C. § 371.

**STANDARD OF REVIEW**

Federal Rule of Criminal Procedure 33 empowers the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992) (quotation omitted). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Id. at 1211-12 (quotation omitted).

**DISCUSSION**

I. Jury Instructions for "Willfully" & "Knowingly"

Jensen's primary argument for a new trial is that the Court erred when it instructed the jury that "[t]o prove that Ms. Jensen acted willfully, the government must prove beyond a reasonable doubt that Ms. Jensen intentionally falsified or caused to be falsified books, records or accounts, knowing the falsification to be wrongful." According to Jensen, "willfully" should have been defined as "knowing one's conduct is unlawful," Ratzlaf v. United States, 510 U.S. 135, 137 (1994).

*A. Meaning of "Willful" as Used in § 78ff*

Willful is a word of many meanings and its construction is often influenced by its context. See, e.g., id. at 141; Spies v. United States, 317 U.S. 492, 498 (1943). The context of this case – as in others defining the word "willful" – is statutory. That is to say, the Court's objective in divining the meaning of "willful" is to "make[] sense of the statute that Congress enacted." Bryan v. United States, 524 U.S. 184, 202 (1998) (Scalia, J., dissenting). The relevant statute for our purposes is 15 U.S.C. § 78ff.

Section 78ff(a), the penalty provision of the Securities Exchange Act of 1934, provides:

> Any person who willfully violates any provision of this chapter (other than section 78dd-1 of this title), or any rule or regulation thereunder the violation

2

> of which is made unlawful or the observance of which is required under the terms of this chapter, or any person who willfully and knowingly makes, or causes to be made, any statement in any application, report, or document required to be filed under this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, or by any self-regulatory organization in connection with an application for membership or participation therein or to become associated with a member thereof, which statement was false or misleading with respect to any material fact, shall upon conviction be fined not more than $5,000,000, or imprisoned not more than 20 years, or both, except that when such person is a person other than a natural person, a fine not exceeding $25,000,000 may be imposed; but no person shall be subject to imprisonment under this section for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation.

(Emphasis added). As with any other exercise in statutory interpretation, the Court must "look first to the statutory language and then to the legislative history if the statutory language is unclear." Blum v. Stenson, 465 U.S. 886, 896 (1984). In ascertaining the plain language of the statute, the Court "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 239 (2004) (quotation omitted).

Thankfully, the Court's task is made easier by the fact that the Ninth Circuit has already interpreted the meaning of "willfully" as Congress used that term in § 78ff(a). In United States v. Tarallo, 380 F.3d 1174 (9th Cir. 2004), a defendant appealed his conviction on the ground that the district court erred by failing to instruct the jurors that § 78ff(a)'s use of the word "willful" requires that the government prove the defendant knows his conduct is unlawful. See id. at 1186. The Ninth Circuit rejected the defendant's argument, holding that "'wilfully' as it is used in § 78ff(a) means intentionally undertaking an act that one knows to be wrongful; 'wilfully' in this context does not require that the actor know specifically that the conduct was unlawful." Id. at 1188 (emphasis added and emphasis in original).

The Ninth Circuit's reasoning was based on the structure and language of § 78ff as a whole. The court observed that § 78ff(a) consists of three distinct parts. See id. at 1187, 1188; see also William B. Herlands, Criminal Law Aspects of the Securities Exchange Act of 1934, 21 Va. L. Rev. 139, 141 (1934). First, the statute contains a "general provision" that governs violations of "any provision" of the Securities Exchange Act, or "any rule or

3

regulation" the violation of which is made unlawful or the observance of which is required by the express terms of the Act. This general provision – which governs in this case, as in Tarallo – imposes criminal liability on a finding of willfulness. Second, the statute contains a "specific provision" that governs false or misleading misstatements of material facts contained in documents, applications, or reports which are required to be filed under the Act or any rule or regulation. The specific provision imposes criminal liability upon a finding of willfulness <u>and</u> knowledge. Third, § 78ff contains a provision concerning punishment upon conviction, which precludes imprisonment in the case of a violation of any rule or regulation if the defendant proves that he had no knowledge of such rule or regulation.

        Putting these three provisions together, the Ninth Circuit concluded that the general provision can be triggered even where the defendant does not know that his actions were unlawful. According to the logic of Tarallo, the general provision's use of the word "willfully" <u>cannot</u> mean "with knowledge that one's conduct violated a provision or rule or regulation," or else "there would be no need to proscribe imprisonment . . . for someone who acted <u>without</u> knowing that he or she was violating a rule or regulation. Such a person could not have been convicted in the first place." Tarallo, 380 F.3d at 1188 (emphasis in original).

        Jensen argues that Tarallo's logic is flawed because it misreads the intent standard established by § 78ff's imprisonment provision. According to Jensen, the imprisonment provision only precludes imprisonment where the defendant proves they lacked knowledge of "a <u>specific</u> rule or regulation." Motion at 15 (emphasis in original). By contrast, Jensen reads the general provision as requiring proof that the defendant knew her "conduct was <u>unlawful</u>." Id. (emphasis in original). Under Jensen's interpretation, it would be consistent to require proof that the defendant knew her conduct was <u>unlawful</u> for <u>conviction</u> and to require the defendant to show that she had no knowledge of a <u>specific</u> rule or regulation for <u>sentencing</u> purposes.

        Jensen is correct that her interpretation would resolve the conflict identified by Tarallo, and the interpretation is at least plausible. Of course, the problem is that her argument is directed at the wrong court. The Ninth Circuit has unambiguously held that

"willful," as used in § 78ff's general provision, requires merely proof that the defendant knew her conduct was wrongful and this Court cannot avoid that plain dictate absent en banc review at the circuit. Although Jensen is welcome to pursue this issue on appeal, the <u>Tarallo</u> court's interpretation of "willful" is consistent with the unanimous view of other circuit courts, as well as the view set forth in the leading treatise on the meaning of § 78ff. <u>See, e.g.</u>, <u>United States v. O'Hagen</u>, 139 F.3d 641, 647 (8th Cir. 1998) ("[T]he text of § [78ff(a)] itself requires us to reject the interpretation O'Hagan urges. . . . Courts that have interpreted 'willfully' in § [78ff(a)] have reached the same conclusion that we reach in this case: 'willfully' simply requires the intentional doing of the wrongful acts-no knowledge of the rule or regulation is required."); William B. Herlands, <u>Criminal Law Aspects of the Securities Exchange Act of 1934</u>, 21 Va. L. Rev. 139, 147-48 (1934) (citations omitted) ("The word 'willfully' in the ordinary sense in which it is used in penal statutes means 'not merely "voluntary" but with a bad purpose.' And such was the definition which the Congressional Committees intended the word to have in the present legislation.").

Since this Court cannot overturn <u>Tarallo</u>, Jensen retreats to the position that the <u>Tarallo</u> standard should not be applied to her circumstances for two reasons. First, Jensen argues that the <u>Tarallo</u> standard applies only to cases in which the intent requirement is willful alone, not willful and knowing, and in this case, Jensen was convicted of a substantive charge – falsification of books and records – that requires a showing of knowledge. Second, Jensen asserts that <u>Tarallo</u>'s "wrongful" willfulness standard can only apply to charges that are inherently nefarious. Neither argument is persuasive.

*B. Application of <u>Tarallo</u> to Non-Inherently Nefarious Charges*

Where conduct at issue is "not inevitably nefarious," courts must pay special attention to the meaning of "wilfulness" as used in criminal statutes. <u>See</u> <u>Ratzlaf</u>, 510 U.S. at 137. If Congress criminalizes conduct that is not obviously criminal, that factor may weigh in favor of concluding that Congress intended for any attending "willfulness" factor to require proof of illegality. <u>See</u> <u>United States v. Henderson</u>, 243 F.3d 1168, 1173 (9th Cir. 2001) ("Because it is not obvious that such conduct would subject an individual to criminal liability, it seems

likely that Congress would have wanted to require a voluntary, intentional violation of a known legal duty as a predicate to criminal liability.") (internal citation omitted). Of course, there may be good reason to conclude that even where Congress subjects individuals to criminal liability for conduct that is not obviously criminal, it nevertheless did not intend to create a specific-intent offense.

This case is unique – and distinguishable from cases like Ratzlaf and Henderson – because Jensen was convicted under a statute that sets forth the mens rea applicable to a wide variety of conduct – violations of any provision of the Securities Exchange Act – some of which is inherently nefarious, some not. Despite the wide variety of conduct governed by § 78ff, Congress created only one intent standard – willfulness. For the reasons explained in Tarallo, the Ninth Circuit has concluded that when Congress drafted § 78ff, it did not intend to require knowledge of illegality and that Congressional intent is obvious from the structure of the statute.

It may be, as Jensen argues, that Congress intended for the meaning of the word "willful" to vary depending on the underlying substantive offense. Under this view, Congress intended for "willful" to mean one thing when the defendant was charged with falsifying books and records, and an altogether different thing when the defendant was charged with making false statements to accountants. Presumably, the meaning of "willful" would turn on the judge's view of whether the underlying offense was or was not inherently nefarious.

While theoretically possible, Jensen's version of § 78ff finds little support in logic or legislative history. There is no indication in the legislative history that when Congress drafted the Securities Exchange Act, it intended for § 78ff to include a flexible mens rea that would vary depending on the underlying offense. As noted above, scholars and courts have interpreted the legislative history to support only one interpretation of willful, the interpretation reached in Tarallo.

Nor are there persuasive reasons for believing that Congress would have wanted the kind of scheme offered by Jensen. The drawback is obvious: the mens rea standard in a

6

criminal case controlled by the Securities Exchange Act would turn on a judge's determination of whether the underlying offense was nefarious or not. Therefore, in different cases involving the same conduct, certain judges might only require a showing of wrongfulness, whereas others would require a showing of knowing illegality.

Put simply, there is no basis – either in caselaw, legislative history, or logic – for concluding that Congress intended for the willfulness standard to vary depending on the underlying offense.

*C. Application of <u>Tarallo</u> Where Underlying Offense Includes Knowledge Requirement*

Jensen's stronger argument is that the <u>Tarallo</u> wrongfulness standard applies only in cases in which the intent requirement is willful alone, not willful and knowing. According to Jensen, where both willfulness and knowledge are required, courts have demanded proof of knowledge of illegality. Therefore, since both wilfulness and knowledge were required in this case, it was inappropriate not to include knowledge of illegality in the jury instructions.

Jensen's argument has cosmetic appeal, but fails under closer scrutiny. What is enticing about Jensen's position is that § 78ff contains a "specific provision," which requires proof of wilfulness <u>and</u> knowledge in particular cases, to wit, where the defendant is charged with making a false or misleading misstatement of material fact in a document, application, or report that is required to be filed under the Securities Exchange Act or any rule or regulation. In his seminal law review article, Judge Herlands interpreted § 78ff's knowledge element as requiring proof of "'knowledge' of the precise illegality of the act." See Herlands, <u>Criminal Law Aspects of the Securities Exchange Act of 1934</u>, 21 Va. L. Rev. at 149. Circuit courts, including the Ninth Circuit, have implicitly endorsed that view. See <u>United States v. Charney</u>, 537 F.2d 342, 351-52 (9th Cir. 1976); <u>United States v. Peltz</u>, 433 F.2d 48, 54 (2d Cir. 1970).

However, the government did not bear the burden of proving "knowledge" as that term is used in § 78<u>ff</u> since this case did not involve misleading misstatements of material fact in a document required by SEC rule or regulation. Rather, the government bore the

7

burden of proving "knowledge" as that term is used in 78m. Section 78m(b)(4) provides that "[n]o criminal liability shall be imposed for failing to comply with the [books & records provision] except as provided in paragraph (5) of this subsection." In turn, § 78(b)(5) states, in relevant part, that "[n]o person shall . . . <u>knowingly</u> falsify any book, record, or account described in paragraph (2)."

The "normal rule of statutory construction" is that "identical words used in different parts of the same act are intended to have the same meaning." <u>Dep't of Revenue of Ore. v. ACF Indust., Inc.</u>, 510 U.S. 332, 342 (1994). It is therefore tempting to assume that as in § 78ff, Congress intended that the knowledge element of § 78m require knowledge of unlawfulness. However, this rule of statutory construction creates only a rebuttable presumption, which:

> readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent. Where the subject-matter to which the words refer is not the same in the several places where they are used, or the conditions are different, or the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning well may vary to meet the purposes of the law, to be arrived at by a consideration of the language in which those purposes are expressed, and of the circumstances under which the language was employed.

<u>Sun v. Ashcroft</u>, 370 F.3d 932, 939-40 (9th Cir. 2004); <u>see also</u> <u>Vanscoter v. Sullivan</u>, 920 F.2d 1441, 1448 (9th Cir. 1990) ("Identical words appearing more than once in the same act, and even in the same section, may be construed differently if it appears they were used in different places with different intent.").

There are persuasive reasons for concluding that Congress did <u>not</u> intend "knowingly" to mean the same thing in both § 78m and § 78ff. Whereas the knowledge requirement in § 78ff dates back to the original Securities Exchange Act legislation from the early 1930s, Congress did not add a knowledge requirement to the Books & Records statute until 1988. <u>See</u> H.R. Conf. Rep. 100-576 (1988), <u>reprinted in</u> 1988 U.S.C.C.A.N. 1547 (1988). Moreover, Congress added the knowledge requirement to the Books & Records statute for a particular reason: "to codify current Securities and Exchange Commission enforcement policy that penalties not be imposed for insignificant or technical infractions or inadvertent

8

conduct." Id. at 917, 1998 U.S.C.C.A.N. at 1950. Congress' concern with protecting individuals from criminalization of "inadvertent conduct" is not necessarily the same concern that motivated Congress in the 1930s when it drafted § 78ff's mens rea requirement.

Starting with the plain language of the statute, it is not immediately clear what "knowing" as used in § 78m(b)(5) was intended to mean. Although it is clear that Congress intended to require a mens rea of "knowingly" with respect to <u>some</u> act, it is uncertain whether "knowingly" applies merely to the falsification of books and records or whether the statute requires both knowing falsification and knowledge that the falsification is proscribed by law. In a similar context, the Supreme Court concluded that "[e]ither interpretation [of the word knowingly] would accord with ordinary usage." Liparota v. United States, 471 U.S. 419, 424 (1985).

Because the plain language of § 78m(b)(5) is not unambiguous, the Court turns to legislative history. Unlike in Liparota, where the Supreme Court concluded that "the legislative history of the statute contains nothing that would clarify the congressional purpose on this point," id., the legislative history of § 78m conclusively demonstrates that Congress did not intend for § 78m's knowledge standard to mean "knowledge of unlawfulness."

The Congressional Record reflects that in adding a knowledge requirement to the Books & Records statute, Congress intended "to ensure that criminal penalties would be imposed where acts of commission or omission in keeping books or records . . . have the <u>purpose of falsifying books</u>, records or accounts. . . . This would include the <u>deliberate falsification of books and records</u>. . . ." H.R. Conf. Rep. 100-576, at 916-17 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1949-50. This account resolves the ambiguity and proves that Congress merely intended to add a mens rea requirement that would protect defendants who acted "inadvertent[ly]".[1] Id. The Court's jury instruction accurately

---

[1] Although of limited persuasive value, it bears noting that when Congress originally drafted the Foreign Corrupt Practices Act in 1977, the Senate's version contained a knowledge requirement that made it unlawful "for any person <u>knowingly</u> to falsify or cause to be falsified any book, record, or account of a reporting company which has been made or is required to be made for any accounting purpose." S. Rep. 95-114, at 16 (1977), reprinted in 1977 U.S.C.C.A.N. 4098, 4114. Although the knowledge requirement was excised for reasons of no

9

reflected congressional intent by requiring that the jury find that Jensen "was aware of the falsification and did not falsify through ignorance, mistake, or accident." Jury Instruction at 17.

In sum, Jensen is correct that when a defendant is charged with violating § 78ff's "specific provision," then proof of knowledge of unlawfulness is required. However, when Congress inserted a knowledge requirement into the Books & Records statute more than 50 years after enactment of the Securities Exchange Act, it did not intend to impose a knowledge of unlawfulness mens rea. Rather, Congress merely intended to protect parties who inadvertently violate the Books & Records statute. As a result, a person can be criminally convicted for a Books & Records violation if the government proves that they acted willfully – that is, knowing the falsification to be wrongful, 15 U.S.C. § 78ff(a) – and acted knowingly – that is, deliberately and not by accident. The jury instructions provided in this case accurately reflected the appropriate mens rea standard.

## II. Void for Vagueness

Jensen's second argument is that the Books & Records statute is void for vagueness as applied to the facts of her case.² The issue presented by this argument is whether the Books & Records statute "give[s] a person of ordinary intelligence fair notice" that Jensen's conduct "is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617 (1954).

---

import here, the Senate clarified that "the term 'knowingly' connotes a 'conscious undertaking.' Thus these paragraphs proscribe and make unlawful conduct which is rooted in a conscious undertaking to falsify records or mislead auditors through a statement or conscious omission of material facts. ¶ The committee believes that the inclusion of the 'knowingly' standard is appropriate because of the danger, inherent in matters relating to financial recordkeeping, that <u>inadvertent misstatements</u> or minor discrepancies arising from an <u>unwitting error</u> in judgment might be deemed actionable. The committee does not, however, intend that the use of the terming 'knowingly' will provide a defense for those who shield themselves from the facts. <u>The knowledge required is that the defendant be aware that he is committing the act which is false– not that he know that his conduct is illegal.</u>" Id. at 9, 1977 U.S.C.C.A.N. at 4107 (emphasis added). If Congress intended to alter the meaning of "knowingly" from the version of legislation proposed in 1977 to the 1988 amendment when the knowledge requirement was finally inserted, there is a surprising lack of explanation for that change in the legislative history.

² Because this case does not involve the First Amendment, Jensen's void for vagueness must be analyzed in the context of whether the Books & Records statute "is impermissibly vague in the circumstances of this case." United States v. Purdy, 264 F.3d 809, 811 (9th Cir. 2001) (emphasis removed).

Vagueness may invalidate a criminal law either because it fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits, or because it authorizes or even encourages arbitrary and discriminatory enforcement. See City of Chicago v. Morales, 527 U.S. 41, 56 (1999). Here, the brunt of Jensen's argument is that ordinary people cannot understand what conduct the Books & Records statute prohibits.

In Village of Hoffman Estates v. The Flipside, 455 U.S. 489, 498-500 (1982), the Supreme Court enumerated four factors affecting a vagueness inquiry, including whether or not the statute at issue (1) involves only economic regulation, (2) contains only civil, not criminal penalties, (3) contains a scienter requirement, which might mitigate any vagueness, and (4) threatens any constitutionally protected rights. These factors militate against finding the Books & Records statute void for vagueness: "[t]he statute regulates only economic conduct. It chills no constitutional rights. While the statute allows for criminal penalties, it requires 'knowing and willful' conduct, a requirement which mitigates any vagueness in the statute." Hanlester Network v. Shalala, 51 F.3d 1390, 1398 (9th Cir. 1995). Moreover, the government persuasively argues that the Books & Records statute is laudably clear: it prohibits a person from falsifying a particular type of corporate book or record. Jensen does not adequately identify which portion of that prohibition is difficult to understand.

In essence, the defense argues that a person of ordinary intelligence could not predict that Jensen's conduct would trigger the Books & Records statute because the law does not "say anything about the date or dates on which the value of stock options must be measured." Motion at 14. But "most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded." United States v. Guterma, 189 F. Supp. 265, 274-75 (S.D.N.Y. 1960). As the Supreme Court responded to a similar argument: "the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate [constitutionally impermissible vagueness]. It demonstrates breadth." PGA Tour, Inc. v. Martin, 532 U.S. 661, 689 (2001) (quotation omitted).

Congress cannot be expected to proscribe with absolute clarity all forms of unlawful conduct. It is enough for Congress to set forth a statute with sufficient clarity that a person of ordinary intelligence could measure their own particular conduct up to the general language and determine whether there is a substantial risk that their conduct crosses the line of legality. In this case, a person of ordinary intelligence would be able to determine that helping to create false committee meeting minutes that have the effect of understating corporate expenses constitutes the falsification of a record that "reflect[s] the transactions and dispositions of the assets of the issuer." 15 U.S.C. § 78m(b)(2)(A).

### III. Conspiracy Liability

Jensen argues that a new trial is warranted because the Books & Records statute does not permit a conspiracy charge. Jensen's argument hinges on the fact that § 78m(b)(4) provides that "[n]o criminal liability shall be imposed for failing to comply with the [books and records provision] except as provided in paragraph (5) of this subsection." Because § 78m(b)(5) does not criminalize conspiratorial conduct, "no criminal liability shall be imposed," argues Jensen.

Section 78m does not expressly repeal the federal conspiracy statute, 18 U.S.C. § 371, and therefore Jensen's argument turns on whether the conspiracy statute has been implicitly repealed by § 78m's language. Repeals by implication are not favored. Accordingly, "[i]n the absence of an affirmative showing of an intention to repeal, the only justification for an implied repeal is when the earlier and later statutes are irreconcilable." Morton v. Mancari, 417 U.S. 535, 549-50 (1974).

The Tenth Circuit persuasively rejected an identical argument in United States v. Lake, 472 F.3d 1247 (10th Cir. 2007). Explaining that language like that contained in § 78m(b)(4) "would ordinarily be understood as only a restriction on the scope of the substantive offense, not as an implied repeal of traditional liability for partners in crime," the court concluded that the intent requirement was added to § 78m for the purpose of limiting criminal liability to those who satisfy a particular scienter standard, not to repeal the conspiracy statute. See id. at 1266. The court also recognized that there is no "apparent

reason" why Congress would want to single out § 78m(b)(2) by excluding coconspirator liability. See id. The Court agrees with the analysis set forth in Lake and concludes that defendants may be convicted either as a principal or as a co-conspirator for violations of the Books & Records statute.

### IV. Knowledge of Effect on Financial Statements

Jensen contends that a new trial is warranted because the jury instructions did not state that, to be convicted, Jensen had to know the backdated documents affected Brocade's financial statements. See Motion at 18. Because the Books & Records statute is part of the federal securities laws, Jensen believes that the government must establish some nexus between falsification of a company's books and that company's securities filings.

The gist of Jensen's argument is that although her conduct may fall within the letter of the Books & Records law, a conviction would violate the spirit of that statute. It is a "familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." Holy Trinity Church v. United States, 143 U.S. 457, 459 (1892), quoted in United Steelworkers of Am., AFL-CIO-CLC v. Weber 443 U.S. 193, 201 (1979); see also United States v. Public Utilities Comm'n, 345 U.S. 295, 315 (1953) (holding that court should not interpret in a way that would "bring about an end completely at variance with the purpose of the statute"). However, "to justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense." Crooks v. Harrelson, 282 U.S. 55, 59-60 (1930). Jensen's argument fails because applying the Books & Records statute to the conduct at issue is not only not absurd, but appears perfectly appropriate in light of the relevant legislative history.

Jensen argues that unless the government is required to prove that a defendant intended to impact a securities filings of some kind, the Books & Records statute will reach conduct that Congress never intended to criminalize. However, as a careful review of the Foreign Corrupt Practice Act's (FCPA) legislative history reveals, Jensen's interpretation of

13

the books of records statute is too miserly and would unduly restrict the reach of the Books & Records provision.

The impetus behind the enactment of the FCPA – of which the Books & Records provision is just one part – was evidence that American corporations were bribing foreign government officials. See S. Rep. 95-114, at 1-2 (1977), reprinted in 1977 U.S.C.C.A.N. 4098, 4099. Congress received evidence that corporations were concealing "questionable or illegal corporate payments" and failing to disclose such payments on their books, thereby degrading "public confidence in the integrity of the system of capital formation." See id. The Books & Records provision was designed to "impose[] affirmative requirements on issuers to maintain books and records which accurately and fairly reflect the transaction of the corporation," and Congress believed that public confidence would be enhanced "by assurance that corporate recordkeeping is honest." Id. at 7, 1977 U.S.C.C.A.N. at 4105.

In essence, Congress was concerned not just that corporations were failing to adequately record transactions that would end up in public securities filings, but that public confidence in the capital markets was being degraded by improper recordkeeping of various sorts. The purpose of the Books & Records statute was not merely to ensure accurate SEC public filings, but to reassure investors that, at the least, all books and records reflecting the economic events and activities of the corporation were accurate and honest. See Bus. Law Monographs: Int'l § 6.03 (Matthew Bender & Co. 2006). In light of the legislative history, there can be little doubt that the statute was designed to prohibit the forging of committee meetings to reflect falsely the authorization of an expenditure, even if the defendant had no knowledge that the forging would affect financial statements. See id.[3]

---

[3] The Court is aware that in a speech by then-SEC Chairman Harold M. Williams, a speech that the SEC agreed would be a formal statement of policy, Chairman Williams stated that "[t]his provision is intimately related to the requirement for a system of internal accounting controls, and we believe that records which are not relevant to accomplishing the objectives specified in the statute for the system of internal controls are not within the purview of the recordkeeping provision." 46 Fed. Reg. 11544, 11545 (1981). Even assuming that this interpretation required the Court to provide an instruction on the nexus between Jensen's conduct and Brocade's financial statements, the Court does not find the interpretation persuasive.

14

Jensen also argues that the government should have to prove a nexus to public securities filings because the FCPA states that it is meant to insure "preparation of financial statements in conformity with generally accepted accounting principles." 15 U.S.C. § 78m(b)(2). The fundamental flaw in this argument is that Jensen conflates the Books & Records provision with a neighboring provision. See Bus. Law Monographs § 6.01 (recognizing that the Books & Records provision and neighboring internal accounting controls provision constitute two distinct statutory provisions). The Books & Records provision directly precedes an independent provision mandating that issuers "devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that," among other things, transactions are recorded in conformity with GAAP. 15 U.S.C. § 78m(b)(2)(B). Unlike the Books & Records provision, § 78m(b)(2)(A), it is plain that § 78m(b)(2)(B)(ii) was designed to criminalize conduct that affects a public company's financial statements. But for the reasons provided above, a review of the text and legislative history relating to § 78m(b)(2)(A) – the only provision with which we are concerned here – reveals that Congress did not intend to limit the reach of the Books & Records provision to records necessary for the preparation of financial statements.

V. New Evidence

Jensen argues that a new trial is warranted by Elizabeth Moore's alleged recantation. The Court set forth in detail and on the record its reasons for rejecting an identical argument

---

Chairman Williams' speech is an informal policy statement that lies "beyond the Chevron pale." United States v. Mead Corp., 533 U.S. 218, 234 (2001); see Christensen v. Harris County, 529 U.S. 576, 587 (2000) ( "[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law[,] do not warrant Chevron-style deference." ). The statement may be entitled to so-called Skidmore deference, but the weight of such deference "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Skidmore v. Swift &Co., 323 U.S. 134, 140 (1944). In this case, Chairman Williams' position contradicted prior SEC pronouncements, see 44 Fed. Reg. 10964, 10964 n.1 (1979), was iterated in a speech that did not necessarily receive vetting from other SEC officials, and – most importantly – is based upon flawed reasoning. As commentators have already recognized, Chairman Williams' position of limiting the books & records provision's applicability "to records necessary to permit the preparation of financial statements" would exclude from liability falsification of records "arguably well within" the reach of Congress' intent. Bus. Law Monographs: Int'l § 6.03 (Matthew Bender & Co. 2006).

15

in <u>United States v. Reyes</u>, 06-0556-1, and therefore will set forth its rationale here in a summary fashion.

A defendant seeking a new trial based on new evidence must establish that: (1) the evidence relied on is, in fact, newly discovered; (2) the movant acted diligently in discovering the new evidence; (3) the evidence relied on is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence would probably produce an acquittal on retrial. <u>See</u> <u>United States v. Krasny</u>, 607 F.2d 840, 842-32 (9th Cir. 1979).

The Court believes that in light of Moore's FBI Form 302, the statements at issue are not "new." Further, even if Moore testified at a retrial that Brocade financial officers knew or suspected that Reyes was backdating, there is not a "reasonable probability" that the retrial would result in acquittal. That is so because Moore's testimony would not undercut the government's evidence demonstrating that: (1) Jensen falsified books, records, or accounts; and (2) did so intentionally and knowing her conduct to be wrongful. Even with Moore's testimony, there remains substantial evidence that Jensen knew her role in the alteration of committee meeting minutes was wrongful. It is not probable that in light of this evidence, the jury would conclude – based on the mere fact that other Brocade employees were aware of the backdating – that Jensen believed her conduct was righteous. Accordingly, Moore's alleged recantation does not justify a new trial.

///

16

**CONCLUSION**

None of the five arguments forwarded by Jensen warrant a new trial: (1) the Court's mens rea instruction accurately set forth the governing legal standard; (2) the Books & Records statute is not void for vagueness; (3) the Books & Records statute did not implicitly repeal the federal conspiracy statute; (4) the Court was not required to instruct the jury of the need for a nexus between Jensen's conduct and an effect on Brocade's financial statements; and (5) Moore's alleged recantation is not new evidence and would not probably result in an acquittal. Accordingly, Jensen's motion for a new trial is DENIED.

**IT IS SO ORDERED.**

Dated: January 25, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE