1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

UNITED STATES,

No. C 06-00556-2 CRB

12

Plaintiff,

**ORDER RE SENTENCING GUIDELINES**

13

v.

14

STEPHANIE JENSEN,

15

Defendant.

16

_____/

17          On December 5, 2007, a jury convicted the defendant Stephanie Jensen on one count

18    of conspiracy and one count of falsifying company books and records.  The evidence at trial

19    proved that as the director of Brocade Communications' Human Resources Department,

20    Jensen willfully and knowingly falsified the company's corporate records over a three-year

21    period to conceal the actual date when stock options were granted by the company's CEO,

22    Gregory Reyes.  Now before the Court is the task of sentencing.

23          As a threshold matter, the Court must determine whether Jensen's sentence may

24    include a term of imprisonment.  The Securities Exchange Act's penalty provision, 15 U.S.C.

25    § 78ff, precludes imprisonment "for the violation of any rule or regulation if [the defendant]

26    proves that he had no knowledge of such rule or regulation."  The Court concludes that

27    Jensen's sentence may include a term of imprisonment because she has not carried her

28    burden of establishing that she had no knowledge of the SEC rule prohibiting the

1  falsification of books and records, 17 C.F.R. § 240.13b2-1.

2      Because the "No Knowledge Clause" does not preclude imprisonment in this case, the

3  Court must accurately calculate the appropriate sentence under the Sentencing Guidelines.

4  Although the United States Sentencing Guidelines are advisory after United States v. Booker,

5  543 U.S. 220 (2005), this Court is still obligated to properly calculate the applicable

6  guideline range.  See United States v. Mohamed, 459 F.3d 979, 985 (9th Cir. 2006).

7  Pursuant to the analysis set forth below, the Court calculates Jensen's recommended sentence

8  as 6-12 months imprisonment, based on a base offense level of 6, a two-level abuse of trust

9  enhancement, and a two-level enhancement for obstruction of justice.

10  ### APPLICATION OF NO KNOWLEDGE CLAUSE

11      Section 78ff(a) provides that "no person shall be subject to imprisonment . . . for the

12  violation of any rule or regulation if he proves that he had no knowledge of such rule or

13  regulation."  Concerned that "a great mass of rules and regulations would be issued by" the

14  SEC in the wake of the Securities Act and Securities Exchange Act, Congress enacted the No

15  Knowledge Clause, thereby "rendering ludicrous a strict adherence to the fiction of presumed

16  knowledge of the law."  United States v. Guterma, 189 F. Supp. 265, 275 (S.D.N.Y. 1960).

17      The No Knowledge Clause is "an affirmative defense to a sentence of imprisonment."

18  United States v. O'Hagan, 521 U.S. 642, 677 n.23 (1997).  As such, the defendant bears the

19  burden of proving no knowledge by a preponderance of the evidence.  See United States v.

20  Knueppel, 293 F. Supp. 2d 199, 204 (E.D.N.Y. 2003).  To be more specific, Jensen bears the

21  burden of proving that she "did not know there was any applicable [SEC] rule" prohibiting

22  the falsification of books and records.  United States v. Dixon,  536 F.2d 1388, 1398 n.10 (2d

23  Cir. 1976); see also Knueppel, 293 F. Supp. 2d at 204 ("Defendants also agree that lack of

24  knowledge of the specific rule violated is immaterial and that they must show lack of

25  knowledge of the substance of the rule . . . .").  It is not a defense for Jensen to argue that she

26  did not know, for example, "the precise number or common name of the rule, the book and

27  page where it was to be found, or the date upon which it was promulgated."  United States v.

28  Lilley, 291 F. Supp. 989, 993 (S.D. Tex. 1968).

As a threshold matter, the government argues that the clause is inapposite because Jensen was convicted of a rule <u>and</u> a statute. The government is correct that the No Knowledge Clause does not protect a defendant convicted of violating a securities <u>statute</u>. <u>See</u> <u>United States v. Sloan</u>, 399 F. Supp. 982, 984 (S.D.N.Y. 1975) ("Congress did intend to maintain the usual presumption of knowledge with respect to the standards prescribed in the securities acts themselves. The 'no knowledge' proviso is explicitly limited to lack of knowledge of a 'rule or regulation'."). Thus, Jensen may not rely on the clause if the jury convicted her of violating the Books & Records statute, 15 U.S.C. § 78m.

However, the Court cannot determine whether the jury convicted Jensen of violation a statute because she was indicted for falsifying books and records in violation of § 78m <u>and</u> 17 C.F.R. § 240.13b2-1. The verdict form asked the jury to decide whether Jensen falsified books, records, and accounts in violation of 15 U.S.C. §§ 78m, 78ff, <u>and</u> 17 C.F.R. § 240.13b2-1. <u>See</u> Docket No. 732. It would be <u>Apprendi</u> error for the Court to decide that the jury convicted Jensen under § 78m rather than under (or in addition to) the attending regulation.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The question that <u>Apprendi</u> forces the Court to answer is whether "the required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict?" <u>Id.</u> at 494.

Finding that the jury convicted Jensen of § 78m would expose her to greater punishment than permitted under § 78ff's No Knowledge Clause. That is to say, if the jury concluded that Jensen violated 17 C.F.R. § 240.13b2-1 – but not § 78m – then the maximum statutory term of imprisonment is zero. By finding that the jury entered a guilty verdict pursuant to § 78m, the Court would expose her to a prison term of up to 20 years, which is – <u>ipso facto</u> – greater than that authorized by statute. Just as a court cannot use a general verdict form in a drug case and make a finding – after a guilty verdict is returned – regarding

3

drug type and quantity, it is not permissible to use a general verdict form in this case and then subsequently make assumptions about what the jury found.[1]

There would be no <u>Apprendi</u> error if the Court could be sure that the jury convicted Jensen under § 78m. But such a certain finding is not possible under the circumstances because § 78m and § 240.13b2-1 are not coextensive. The SEC's regulation is more broad because it prohibits both direct <u>and indirect</u> falsifications and contains no mens rea requirement. <u>See</u> 17 C.F.R. § 240.13b2-1 ("No person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to Section 13(b)(2)(A) of the Securities Exchange Act."). The Jury Instructions expressly permitted the jury to convict Jensen if they concluded that she <u>indirectly</u> falsified documents. <u>See</u> Jury Instructions at 16 (stating that the jury must find "Ms. Jensen, directly or indirectly, falsified or caused to be falsified any such book, record or account of Brocade").

The government argues that a defendant can be convicted of indirectly falsifying books under § 78m as well, pursuant to aiding and abetting liability. <u>See</u> 18 U.S.C. § 2. But that argument hinges on the assumption that aiding and abetting liability contemplates all conduct criminalized by § 240.13b2-1, which it does not. Aiding and abetting liability requires proof of some affirmative act of <u>assistance</u> in the commission of the crime. <u>See</u> <u>Altamirano v. Gonzales</u>, 427 F.3d 586, 594 (9th Cir. 2005). Contrarily, acts of <u>omission</u> might be sufficient to trigger liability under Rule 13b2-1. <u>See</u> <u>SEC v. Softpoint, Inc.</u>, 958 F. Supp. 846, 866 (S.D.N.Y. 1997) (concluding that corporate president violated Rule 13b2-1 by failing to excise fictitious entries and payments from accounts receivable ledger).

Nor is it any answer to argue that Jensen was convicted of another statute: the federal conspiracy statute, 18 U.S.C. § 371. Where the defendant is convicted of a misdemeanor –

---

[1] In <u>United States v. Tarallo</u>, 380 F.3d 1174 (9th Cir. 2004), the Ninth Circuit rejected the defendant's argument that § 78ff is facially unconstitutional because it violates <u>Apprendi</u>'s rule that any fact other than a prior conviction which increases the penalty for a defendant's crime beyond the statutory maximum must be submitted to the finder of fact and proved beyond a reasonable doubt. The Court held that § 78ff(a) is constitutional because it merely provides for an affirmative defense that can <u>mitigate</u> a sentence, and does not authorize an <u>enhancement</u> in sentence. <u>Id.</u> at 1192. Of course, Jensen forwards a different and more powerful challenge. She argues not that the Court cannot make a finding as to knowledge, but rather that the Court cannot make a finding as to what the jury concluded.

that is, an offense punishable by one year of imprisonment or less, see 18 U.S.C. § 1 – then "the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." 18 U.S.C. § 371. If Jensen could not be imprisoned because she did not know that her conduct violated a SEC rule or regulation, she could not be imprisoned pursuant to the conspiracy statute either.

Accordingly, the question becomes whether Jensen has satisfied her burden of proving by a preponderance that she was unaware of a SEC rule or regulation prohibiting the falsification of books and records. In the Court's opinion, she has not. Jensen argues that: (1) her background and experience are in areas that have nothing to do with SEC rules and regulations; (2) her job responsibilities had nothing to do with SEC rules or regulations; (3) Jensen had nothing to do with the SEC reporting process; (4) none of the individuals who worked with Jensen drew any connection between their work on options grants and SEC regulations; and (5) none of the more than 50 deponents in the SEC action recall discussing anything connected to any SEC rule with Jensen.

There is no smoking gun conclusively demonstrating that Jensen was aware that falsification of books was outlawed by SEC regulation. However, the circumstantial evidence that Jensen offers up is insufficient to carry her burden in light of the evidence established at trial. As explained in the Order Denying Motion for Acquittal (Docket No. 824), there is substantial evidence that Jensen knew her conduct was wrongful, including the fact that Jensen attempted to minimize the obviousness of backdated options, concealed the way options were actually dated, and directed employees not to communicate about options over the phone or email. To be sure, Jensen can only be imprisoned if she knew her conduct was unlawful and knew that it was prohibited by SEC rule or regulation. But in light of the evidence demonstrating that Jensen knew her conduct affected Brocade finances, the Court is assured that Jensen also knew she was violating SEC rule or regulation.

For example, Jensen received emails establishing that options had an effect on Brocade financials and audits. On January 28, 2002, Jensen received an email from Brocade comptroller Bob Bossi, asking for the stock grant list to support an upcoming quarter-end

audit from Arthur Anderson.  <u>See</u> 90:21-91:20.  Similarly, Jensen received an email confirming that the stock options grant lists and compensation committee meetings would be used in Brocade's year-end audit.  <u>See</u> RT 367:12-24.  The only reasonable conclusion to draw is that Jensen knew that stock options, and how they were priced, affected the audited results of the company.

Moreover, there was evidence at trial that after Jensen shepherded options through the pricing process, the forms were then given to the finance department so that finance could ensure that the grants were accurate.  <u>See</u> RT 530:4-14, 532:2-8.  It can be reasonably assumed that as director of human resources, Jensen understood the chain for processing option grants and that stock options went from human resources directly to finance.  A reasonably intelligent corporate official would understand that if the options forms went directly to finance, that was so because the forms had an effect on Brocade's financials.  Falsifying options grants would therefore impair the integrity of the company's financials, which a reasonable official would know is illegal under SEC rule and regulation.

In short, the Court does not believe that Jensen was so far removed from the financial side of the process that she would not know her conduct was prohibited by the SEC.  Jensen clearly knew her conduct was unlawful and, the Court believes, knew that her conduct affected Brocade's finances and audits.  Under the circumstances, Jensen has not persuasively established that she was unaware her conduct violated any SEC rule or regulation.

### SENTENCING GUIDELINES

In determining the sentence of co-defendant Gregory Reyes, the Court concluded that it would be inappropriate to enhance the sentence for loss, number of victims, and sophisticated means.  <u>See</u> U.S.S.G. § 2B1.1(b); <u>id.</u> § 2B1.1(b)(2); <u>id.</u> § 2B1.1(b)(9).  For the reasons set forth in the Court's order of November 27, 2007 (Docket No. 737), the Court reaches the same conclusion with respect to Jensen's sentence.  As to other enhancements, the Court will impose a two-level abuse of trust enhancement and a two-level enhancement

1    for obstruction of justice, but rejects the government's request for an aggravating role

2    enhancement and a public officer enhancement.

3    A. Standard of Review

4    In general, the government bears the burden of proving, by a preponderance of the

5    evidence, the facts necessary to enhance a defendant's offense level under the Sentencing

6    Guidelines. See United States v. Burnett, 16 F.3d 358, 361 (9th Cir. 1994). However, when

7    a sentencing factor has an extremely disproportionate effect on the sentence relative to the

8    offense of conviction, due process requires that the government prove the facts underlying

9    the enhancement by clear and convincing evidence. See United States v. Jordan, 256 F.3d

10   922, 926 (9th Cir. 2001).

11   Under Jordan's "totality of the circumstances" test, the Court must determine the

12   appropriate standard of review by examining such factors as whether the government seeks

13   an increase of more than four offense levels, and whether the enhancements sought would

14   double the sentence. See id. at 928. Here, the government seeks an increase of nine offense

15   levels. With an increase of nine levels, Jensen's recommended sentence would more than

16   double, from 0-6 months to 18-24 months. In light of the substantial increase in Jensen's

17   recommended sentence that would result from applying the enhancements sought by the

18   government, the contested enhancements require clear and convincing evidence.

19   B. Base Offense Level

20   The parties dispute the appropriate base offense level. The base offense level for most

21   fraud-related crimes was increased from six to seven in the Guidelines manual that became

22   effective on November 1, 2003.[2] Jensen argues that applying the 2007 manual to her conduct

23   would violate Apprendi v. New Jersey, 530 U.S. 466 (2002), because the jury made no

24   finding that the conduct underlying its verdict occurred after November 1, 2003. The

25   government argues that it would not violate the ex post facto clause to apply the 2007 manual

26

27   _____

28   [2] The offense level for the books and records charge is dictated by U.S.S.G. § 2B1.1. See U.S.S.G. App. A. The offense level for the conspiracy charge is identical to the substantive offense, pursuant to U.S.S.G. § 2X1.1(a).

1   because there is no evidence that Jensen withdrew from the conspiracy or stopped falsifying

2   books and records after November 1, 2003.

3       Jensen's argument that <u>Apprendi</u> precludes the Court from making a finding of fact

4   regarding the end date of the conspiracy is off the mark.  In short, there is no <u>Apprendi</u>

5   problem because the Sixth Amendment's right to a jury trial attaches only when the facts at

6   issue have the effect of increasing the maximum punishment to which the defendant is

7   exposed.  <u>Apprendi</u>, 530 U.S. at 489-94.  The advisory Guidelines do <u>not</u> have this effect;

8   they require the district judge to make findings of fact, but none of these alters the judge's

9   final sentencing authority, they merely inform the judge's broad discretion.  <u>United States v.</u>

10  <u>Booker</u>, 543 U.S. 220, 233 (2005).  Nonetheless, the Court concludes that a base offense

11  level of six is appropriate because the government has not demonstrated by clear and

12  convincing evidence that Jensen was convicted for conduct that occurred after November 1,

13  2003.

14      In general, the Court must use the Guidelines Manual in effect on the date that the

15  defendant is sentenced.  <u>See</u> U.S.S.G. § 1B1.11(a).  An exception exists, however, where use

16  of the Guidelines Manual in effect on the date the defendant is sentenced would violate the

17  Ex Post Facto Clause.  <u>See id.</u> § 1B1.11(b)(1).  In that event, the Court must use the manual

18  in effect on the date that the offense of conviction was committed.  <u>Id.</u>; <u>see also</u> <u>United States</u>

19  <u>v. Warren</u>, 980 F.2d 1300, 1304 (9th Cir. 1992).

20      If the defendant is convicted of a continuing offense, and the offense continued after

21  amendments inflicting greater punishment have been made, the amended guidelines may be

22  applied without offending the Ex Post Facto Clause.  <u>See</u> <u>United States v. Beardslee</u>, 197

23  F.3d 378, 387 (9th Cir. 1999).  "If, however, the underlying offense is a non-continuing

24  offense that occurred before the amendment, or a continuing offense that was completed

25  entirely before the amendment, the defendant must be sentenced under the relevant

26  provisions of the guidelines in effect at the time the offense occurred."  <u>Id.</u>

27      Jensen was convicted of conspiracy, which is a continuing offense.  <u>See</u> <u>United States</u>

28  <u>v. Castro</u>, 972 F.2d 1107, 1112 (9th Cir. 1992).  Thus, it would not violate Jensen's ex post

facto rights to impose a base offense level of seven unless she affirmatively abandoned the conspiracy before November 1, 2003. See id. (holding that conspiracy is presumed to continue until there is affirmative evidence of abandonment, withdrawal, disavowal, or defeat of the object of the conspiracy). Jensen argues that she is entitled to a base offense level of six because the jury did not find that the conspiracy continued past November 1, 2003. But that argument fails because even after Apprendi, the Court may make factual findings in the course of selecting a sentence. See United States v. Ameline, 409 F.3d 1073, 1077 -78 (9th Cir. 2005) (en banc) ("Standing alone, judicial consideration of facts and circumstances beyond those found by a jury or admitted by the defendant does not violate the Sixth Amendment right to jury trial. A constitutional infirmity arises only when extra-verdict findings are made in a mandatory guidelines system.").

Jensen argues that it would violate Apprendi for the Court, as opposed to the jury, to make a factual finding about the end-date of the conspiracy. In Apprendi, the Supreme Court held that judicial factfinding violates the Sixth Amendment when that factfinding enhances the maximum sentence to which a defendant is subject. See Apprendi, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); see also Blakely v. Washington, 542 U.S. 296, 303 (2004) ("[T]he 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."). In Booker, the Court recognized that under the logic of Apprendi, it was unconstitutional for sentencing courts to impose a higher sentence than that authorized by the "base" Guidelines range – which was otherwise binding on the district court – by making findings of fact that had not been found by the jury. But the Supreme Court resolved this problem not by requiring juries to find facts relevant to sentencing, but by making the Guidelines effectively advisory. Compare Booker, 543 U.S. at 244 (opinion of Stevens, J.) (requiring that jury find facts necessary to support a sentence exceeding the maximum authorized by the facts established by verdict or guilty plea), with Booker, 543 U.S. at 246-47 (opinion of Breyer, J.)

9

1   (concluding that because the constitutional infirmity of the Guidelines was attributable to

2   their mandatory application under the Sentencing Reform Act, the Sixth Amendment

3   problem would fall away if the Guidelines were merely advisory).  There can be no doubt

4   that in light of the logic of <u>Booker</u>, the right to a jury trial – as well as the right to proof

5   beyond a reasonable doubt – does not apply to facts relevant to enhancements under an

6   <u>advisory</u> Guidelines regime.  <u>See</u> <u>Ameline</u>, 409 F.3d at 1077-78; <u>see also</u> <u>United States v.</u>

7   <u>Clark</u>, 452 F.3d 1082, 1085-86 (9th Cir. 2006).

8        The case upon which Jensen relies – <u>United States v. Julian</u>, 427 F.3d 471 (7th Cir.

9   2005) – is inapposite because that case involved judicial factfinding that subjected the

10  defendant to an increased maximum penalty under a <u>statute</u>, the Protection of Children from

11  Sexual Predators Act of 1998.  <u>Julian</u> was directly controlled by <u>Apprendi</u> because the judge

12  made a finding – that the conspiracy continued beyond the date when Congress increased the

13  maximum penalty authorized by statute – that increased the penalty for defendant's crime

14  "beyond the prescribed statutory maximum."

15       But the advisory Guidelines do <u>not</u> require the judge to find facts that have the effect

16  of increasing the maximum punishment to which the defendant is exposed.  None of the facts

17  found during the sentencing process alters the judge's final sentencing authority.  <u>See</u>

18  <u>Booker</u>, 543 U.S. at 233 ("[W]hen a trial judge exercises his discretion to select a specific

19  sentence within a defined range, the defendant has no right to a jury determination of the

20  facts that the judge deems relevant.").  "Once a jury has found a defendant guilty of each

21  element of an offense beyond a reasonable doubt, he has been constitutionally deprived of his

22  liberty and may be sentenced up to the maximum sentence authorized under the United States

23  Code without additional findings beyond a reasonable doubt."  <u>United States v. Grier</u>,  475

24  F.3d 556, 561 (3d Cir. 2007) (en banc).  That is to say, because the jury convicted Jensen of

25  conspiracy and falsifying books and records, the Court may sentence Jensen up to 20 years

26  imprisonment, <u>see</u> 15 U.S.C. § 78ff, without submitting <u>any</u> additional facts to the jury.

27       Because neither <u>Apprendi</u> nor <u>Booker</u> preclude judicial factfinding in the context of

28  sentence enhancements, the Court must determine whether there is sufficient evidence to

10

1   conclude that application of the 2007 Guidelines manual is appropriate because Jensen was

2   convicted for conduct that post-dated November 1, 2003.

3        As Jensen notes, the evidence at trial related almost exclusively to the period prior to

4   November 1, 2003, and there was no evidence introduced that Jensen was involved in the

5   preparation of stock option paperwork after that date.  In the Ninth Circuit, a conspiracy is

6   presumed to continue until there is affirmative evidence of abandonment, withdrawal,

7   disavowal or defeat of the object of the conspiracy.  See United States v. Bloch, 696 F.2d

8   1213, 1215 (9th Cir. 1982).  But Colleen Devine testified at trial that the May 22, 2003 grant

9   minutes memorialized the "last grant" with which she and Jensen were involved together.

10  See RT 280, 286:8-14.  Moreover, evidence at the Reyes trial established that "mid-year

11  2003," June Weaver took over the stock option granting role played by Jensen.  See Reyes

12  RT 445:12-16.[3]  In light of this evidence, the government has not established by clear and

13  convincing evidence that the conspiracy existed beyond November of 2003.

14       Similarly, the government has failed to meet its burden in proving that Jensen falsified

15  books and records after November 1, 2003.  Because the latest grant minutes introduced by

16  the government connected to Jensen were prepared in June of 2003, see Exhibit 923, there is

17  no clear and convincing evidence to support the conclusion that Jensen falsified books after

18  the summer of 2003.

19       Because the Court is not confident that Jensen was convicted for conduct that

20  occurred after November 1, 2003, it would violate the ex post facto clause to subject her to a

21  base offense level of seven.  Accordingly, Jensen's guideline sentence will be calculated with

22  a base offense level of six.

23       C. Aggravating Role

24       Section 3B1.1 of the Sentencing Guidelines provides for a two to four-level

25  enhancement for aggravating role.  If the defendant was an "organizer or leader of criminal

---

27  [3] In arriving at an appropriate sentence, the Court is not limited to a review of the
    evidence proffered at trial.  See United States v. Tucker, 404 U.S. 443, 446 (1972) ("It is surely
28  true . . . that before [determining what sentence to impose], a judge may appropriately conduct
    an inquiry broad in scope, largely unlimited either as to the kind of information he may consider,
    or the source from which it may come.").

activity that involved five or more participants or was otherwise extensive," the Court may

increase by four levels. U.S.S.G. § 3B1.1(a). If the defendant was a "manager or supervisor

(but not an organizer or leader) and the criminal activity involved five or more participants or

was otherwise extensive," the Court may increase by three levels. See id. § 3B1.1(b). If the

defendant was "an organizer, leader, manager, or supervisor in any criminal activity other

than that described in (a) or (b)," the Court may increase by two levels. See id. § 3B1.1(c).

The government requests a three-level enhancement because Jensen was a manager or

supervisor of the backdating scheme. But an adjustment under this section would be

inappropriate because Jensen did not manage or supervise "one or more other participants."

Id. § 3B1.1 App. n.2 (emphasis added). A "participant" is "a person who is criminally

responsible for the commission of the offense." Id. § 3B1.1 App. n.1. Thus, to qualify for an

enhancement under § 3B1.1, "there must be evidence that the defendant 'exercised some

control over others involved in commission of the offense [or was] responsible for organizing

others for the purpose of carrying out the crime.'" United States v. Harper, 33 F.3d 1143,

1151 (9th Cir. 1994) (quoting United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.

1990)) (emphasis added). The government must show that Jensen exercised control over at

least one other participant, regardless of whether the offense was "otherwise extensive"

because the scheme involved unwitting outsiders. See United States v. Luca, 183 F.3d 1018,

1024 (9th Cir. 1999).

But the evidence at trial showed no such thing. While an enhancement for Reyes was

appropriate because he organized Jensen's involvement, there is no evidence that Jensen

managed any other criminally responsible person (that is, a person who not only backdated

option grants but did so with the requisite mens rea). Indeed, the thrust of the government's

theory at trial was that there were no criminally responsible parties other than Jensen and

Reyes. Perhaps for that reason, the government does not even attempt to identify a

criminally responsible party that was managed by Jensen. It follows that the government has

not borne its burden of demonstrating by "clear and convincing" evidence that an

enhancement under § 3B1.1 is appropriate.

### D. Officer of a Public Company

Section 2B1.1(b)(15)(A)(i) authorizes a four-level enhancement if the offense involved a violation of securities law and, at the time of the offense, the defendant was an officer of a publicly traded company. Under the plain language of that enhancement, the government must show that (1) the defendant violated a securities law and (2) the defendant was a qualifying individual at the time of the violation.[4] The government argues that Jensen was convicted of a securities violation and, because Jensen was a "vice president" at Brocade, she was, by definition, an "officer" of the company.

As to the first requirement, there can be no doubt that Jensen violated a "securities law." Section 2B1.1 defines "securities law" as "18 U.S.C. §§ 1348, 1350, <u>and the provisions of law referred to in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47))</u>; and . . . includes the rules, regulations, and orders issued by the Securities and Exchange Commission pursuant to the provisions of law referred to in such section." U.S.S.G. § 2B1.1, cmt. n.14(A) (emphasis added). In turn, § 78c(a)(47) refers to the provisions of the Securities Exchange Act, 15 U.S.C. § 78a et seq., one of which Jensen was convicted of violating. Thus, the only material dispute is whether, at the time of the offense, Jensen was an "officer."

Section 2B1.1 does not include a definition of "officer." Therefore, the Court must look to other sources for the term's meaning. The public officer enhancement was inserted by the Sentencing Commission in response to Sarbanes-Oxley, and to Congress' instruction to "provide an enhancement for officers or directors of publicly traded corporations who

---

[4] In inserting the public officer enhancement into the Guidelines, the Commission expressed concern over its discovery that the abuse of trust enhancement, U.S.S.G. § 3B1.3, was applied to less than one-third of 35 officers or directors convicted of securities fraud offenses in fiscal year 2001. <u>See</u> United States Sentencing Commission, <u>The Sentencing Commission's Implementation of the Sarbanes-Oxley Act</u> 13 (2003). The essence of the corporate officer enhancement is that it assumes the public trust enhancement applies in cases involving corporate officer defendants. <u>See id.</u>

commit fraud and related offenses."[5]  Hence,  it is only logical to look to Sarbanes-Oxley and its accompanying regulations to discern the meaning of "officer."

Unfortunately, "officer" is neither defined within Sarbanes-Oxley, nor by 15 U.S.C. § 78c, the provision of the Securities Exchange Act entitled "Definitions and Application." However, regulations promulgated by the SEC pursuant to § 78c do offer a definition of officer.  Rule 3b-2, 17 C.F.R. § 240.3b-2, defines officer to mean "a president, vice president, secretary, treasury or principal financial officer, comptroller or principal accounting officer, and any person routinely performing corresponding functions with respect to any organization whether incorporated or unincorporated."  (Emphasis added).

In rules promulgated pursuant to Sarbanes-Oxley, the SEC has assumed that the meaning of "officer" is controlled by the definition set forth in Rule 3b-2.  See In re Improper Influence on Conduct of Audits, Exchange Act Release No. 47,890 (May 20, 2003).  Therefore, there are persuasive reasons for assuming that the SEC's definition also controls in the context of § 2B1.1.

However, even if Rule 3b-2 provides the applicable definition, the fact that Jensen was a Vice President of Brocade is not dispositive.  Courts must take a practical approach to the determination of whether the defendant is an "officer"; the title of "Vice President" does no more than create "an inference" that can be overcome by proof that the defendant did not exercise the executive responsibilities traditionally associated with corporate officers.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston, 566 F.2d 1119, 1122 (9th Cir. 1978); see also In re Gap Stores Sec. Litig., 457 F. Supp. 1135, 1141 (N.D. Cal. 1978) ("Officers are correctly held to a higher standard of conduct than lesser employees . . . but

---

[5]  The public officer enhancement only became effective in January of 2003.  Because the government charged Jensen with conduct that both pre- and post-dates the officer enhancement, Jensen renews her argument that Apprendi precludes the Court from finding that Jensen committed unlawful conduct after the triggering date.  For the reasons provided above, Jensen's Apprendi argument is unpersuasive.  Moreover, there is clear and convincing evidence of unlawful activity post-dating the effective date of the officer enhancement.  The government proffered evidence of backdated grant minutes prepared by Jensen in June of 2003.  See Trial Exhibit 923.  Witness Colleen Devine testified that Jensen was involved in grant minutes memorializing a May 22, 2003 compensation committee meeting.  See RT 286:8-14.  This evidence compels the conclusion that applying the public officer enhancement to Jensen's conduct would not violate her ex post facto rights.

14

1  even then courts are directed to look behind the title to determine whether some significant

2  access to inside information actually accompanied the position. Unlike directors, officers do

3  not necessarily possess any particular authority or responsibility."). In the context of

4  Sarbanes-Oxley and § 2B1.1, the relevant question is whether the public officer enhancement

5  is appropriate because Jensen was the kind of Vice President who owed "heightened

6  fiduciary duties" to shareholders under the securities laws. See U.S.S.G. § 2B1.1,

7  Commentary (2003).

8  The government has not demonstrated – at least not by clear and convincing evidence

9  – that Jensen was the kind of Vice President who owed a heightened fiduciary duty to

10  shareholders. Brocade proxy statements, 10-Qs, and 10-Ks frequently listed corporate

11  officers, including the Vice Presidents in charge of Engineering, Operations, and Sales – core

12  decisional and policy-making roles – but never Jensen. See, e.g., Ragland Decl. Exh. B. In

13  addition, the government has identified no securities law that imposes heightened duties on

14  executives in divisions such as human resources, as opposed to divisions more closely

15  connected to the operational functions of the company.

16  To be sure, Jensen played an important internal role in the organization. Jensen was

17  one of only nine executives who reported directly to Reyes, see RT 650:12-15, in contrast to

18  sixteen Vice Presidents who did not, see RT 651:6-9. But the government has not pointed to

19  persuasive evidence demonstrating that Jensen played the kind of role in relation to

20  shareholders such that as head of Human Resources, she owed them a heightened fiduciary

21  duty. Accordingly, the Court will not impose the four-level public officer enhancement.

22  E. Abuse of Trust

23  Because the Court will not impose the public officer enhancement, it may consider

24  whether to impose an enhancement for abuse of trust. See U.S.S.G. § 2B1.1 cmt. n.14(C)

25  (providing that the Court may not apply § 3B1.3 if it enhances pursuant to subsection

26  (b)(15)). The abuse of trust enhancement allows for a two-level increase "[i]f the defendant

27  abused a position of public or private trust . . . in a manner that significantly facilitated the

28  commission or concealment of the offense." U.S.S.G. § 3B1.3. An enhancement for abuse

of trust is appropriate because even if Jensen did not owe shareholders a <u>heightened</u> fiduciary duty, she did exercise a position of trust because she enjoyed discretion over the maintenance of books and records that affected Brocade financials.

To impose an enhancement for abuse of trust, the government must establish by clear and convincing evidence that: (1) Jensen occupied a position of trust; and (2) Jensen abused her position in a manner that significantly facilitated the commission or concealment of the offense. As to the first inquiry, "the primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." <u>United States v. Hill</u>, 915 F.2d 502, 506 (9th Cir. 1990). The pertinent question is whether the defendant stands in a position of trust with respect to the <u>victim</u>, in this case Brocade's shareholders. <u>See id.</u> at 506. The Ninth Circuit has identified two indicia of a position of trust.

The first indicium is the inability of the trustor objectively and expediently to determine the trustee's honesty. <u>See id.</u> This indicium turns on whether there is an objective and expedient mechanism for discovering criminal activity in place, such as the daily audit of an ordinary bank teller's till. <u>See id.</u> There is a mechanism for discovering corporate fraud – financial reporting requirements – but the mechanism can be easily evaded by corporate officers, as this case demonstrates. Accordingly, the first indicium weighs in favor of applying the abuse of trust enhancement.

The second indicium is the ease with which the trustee's activities can be observed. <u>See id.</u> This factor also favors imposition of the enhancement because there was substantial distance between Jensen's conduct and the watchful eyes of concerned shareholders. Shareholders received only snapshots of financial data, and could not involve themselves in the actual process of stock option granting. Accordingly, it was extremely difficult for shareholders to oversee Jensen's behavior.

Having occupied a position of trust, it must next be determined whether Jensen abused her position "in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. This inquiry turns on whether the position of trust "contributed

1  in some significant way to facilitating the commission or concealment of the offense (e.g., by

2  making the detection of the offense or the defendant's responsibility for the offense more

3  difficult)." Id. cmt. n.1.

4      Jensen used her managerial position to escort the backdated stock option grants

5  through the necessary processes. It was Jensen who involved and oversaw employees in the

6  human resources department tasked with the picking of lower dates, Jensen who ordered her

7  employees to conceal the picking of past dates by not using email or phones, and Jensen who

8  coordinated the signing of falsified dates by Reyes, providing the CEO with an array of

9  earlier dates from which he could select. "A lesser employee of the firm could not have

10  accomplished these things . . . which significantly facilitated the scheme's success and

11  concealment." United States v. Bhagavan, 911 F. Supp. 351, 355 (N.D. Ind. 1995).

12      Even if Jensen did not owe a heightened fiduciary duty to shareholders, she was

13  entrusted with accurately maintaining books and records that affected the financials of the

14  company. Thus, there can be no doubt that shareholders were obligated to trust that Jensen

15  would properly maintain any books and records bearing on Brocade's assets. Because

16  Jensen occupied a position of trust and abused that position to commit and conceal the

17  falsification of books and records, a two-level enhancement is appropriate.

18      <u>F. Obstruction of Justice</u>

19      The Court will enhance Jensen's sentence by two levels pursuant to § 3C1.1 because

20  she impeded justice by proffering – through counsel – a false declaration in support of her

21  motion to sever. Jensen's arguments that the declaration was truthful and that she should not

22  be punished for the conduct of her attorney are unpersuasive.

23      Section 3C1.1 of the Sentencing Guidelines provides for a two-level increase if "the

24  defendant willfully obstructed or impeded . . . the administration of justice with respect to the

25  investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the

26  obstructive conduct related to . . . the defendant's offense of conviction and any relevant

27  conduct; or . . . a closely related offense." According to the application notes, a party

28

obstructs justice by "providing materially false information to a judge." U.S.S.G. § 3C1.1, cmt. n.4(f).

By providing non-exhaustive illustrations, the Sentencing Commission has left considerable discretion in applying § 3C1.1 to the sentencing court. In view of the variety of situations that might constitute obstruction of justice, the Commission necessarily relied on the district court's reasoned exercise of discretion in applying § 3C1.1 to particular fact patterns. See United States v. Maccado, 225 F.3d 766, 770 (D.C. Cir. 2000).

Application of § 3C1.1 in this case requires the Court to answer two questions. First, did Reyes' declaration obstruct justice by impeding the prosecution of the instant offense of conviction? Second, may Jensen be held responsible for the obstruction because her conduct was willful and she bears responsibility for the acts of her counsel. As to the first question, there can be no doubt that Reyes' declaration did impede justice.

In his declaration, Reyes declared, "I told Ms. Jensen that the option grant dates were the dates that I made the granting decisions. Options were priced at the fair market value on the grant dates." Reyes Decl. ¶7 (emphasis added). Jensen argues that no one obstructed justice because the declaration did not provide false information to the Court. According to Jensen, Reyes' declaration intended to convey that he sometimes priced grant dates on the same day he made granting decisions, but was not intended to deny that on other occasions, Reyes did backdate option grants with Jensen's help. See Defendant's Sentencing Brief Exh. 1 at 2.

Even if Jensen is correct that, technically speaking, Reyes' statement was not per se false, the Court still finds that the declaration impeded justice because it was seriously misleading. Within the context of Jensen's motion to sever, the Court was attempting to figure out whether a severance was appropriate because Reyes could offer exculpatory evidence on Jensen's behalf. A key factor in the Court's determination was "the possible weight and credibility of the predicted testimony." United States v. Kaplan, 554 F.2d 958, 966 (9th Cir. 1977) (per curiam). Jensen's counsel argued that paragraph seven of Reyes' declaration was "as exculpatory as it gets," because the jury could not convict Jensen if

18

Reyes' statement was true. <u>See</u> Order Granting Motion to Unseal, Exh. C at 3. Jensen's counsel also stated that there was "no evidence" Jensen knew about Reyes' backdating, and argued that the language in the declaration was "specific," "unambiguous," and "couldn't be clearer." <u>Id.</u> at 4, 5.

Reyes' declaration, in combination with the statements of counsel, misled the Court into believing that Reyes' declaration related to <u>all</u> stock option grants. Whether or not Reyes and Jensen's counsel subjectively believed that the declaration only related to some grants, there was no way for the Court to discern that subtle distinction. It was impossible for the Court to understand the true meaning of the declaration because the Court was told that the language was "unambiguous" and "couldn't be clearer." But the declaration was only unambiguous if it means what is says, that is, that Reyes dated options on the date he made options decisions. The declaration <u>nowhere</u> suggests that it is limited to certain grants, and to so argue obliterates the notion that the declaration was clear or unambiguous.

Moreover, it is impossible to reconcile the argument – made at the time of severance by Jensen's counsel – that the Reyes declaration precluded conviction with Jensen's current argument that Reyes' declaration only related to <u>some</u> option grants. If the declaration related to some option grants, then the jury surely could convict – as they did – based on other backdated grants.

Thus, even if Reyes' statements were per se true, an enhancement for impeding justice is appropriate because proffering misleading evidence in an attempt to persuade the Court to grant an otherwise-unjustified severance motion is the kind of conduct that falls under the ambit of § 3C1.1.[6] <u>See</u> <u>United States v. Magana-Guerrero</u>, 80 F.3d 398, 401 (9th Cir. 1996) ("As we see it, what distinguishes the application notes [dealing with false information] that don't require actual obstruction from those that do is that the former anticipate lack of candor

---

[6] There can be no doubt that the severance motion was otherwise unjustified. If Jensen had honestly represented that the declaration only related to some option grants, the severance motion would have been denied out of hand. That is so because testimony from Reyes that he told Jensen certain options were properly dated would matter not a whit in the face of the prosecution's evidence that Jensen knew other options were being backdated.

toward the court.") (emphasis added). Other courts have imposed an obstruction enhancement in analogous situations.

For example, in United States v. Alexander, 292 F.3d 1226 (10th Cir. 2002), the defendant filed a motion in limine to suppress statements made under interrogation. In support of the motion, the defendant testified about his recollection of an event, but the testimony contradicted testimony later provided at trial. The district court concluded that the defendant perjured himself and imposed a two-level enhancement for obstruction of justice. The Tenth Circuit, while upholding the enhancement, based its decision on an alternate ground. The court concluded that the defendant had "impeded" the administration of justice by delaying the trial and subsequent sentencing "by initiating a sham proceeding during which [he] repeatedly uttered falsehoods under oath." Id. at 1235. Defendant thereby squandered the energies of the court and the judge for a meritless motion. Id. The court acknowledged that "a defendant has an absolute right to mount a maximum defense to any criminal charge, including making a pre-trial motion to suppress evidence," but warned that "[o]ne cannot utilize the resources of the judicial process to deliberately lie under oath and contest the government's position that lies at the heart of a motion. . . . One cannot do this, in the language of ancient common law, without suffering 'pains and penalties,' which, in this case, is an enhancement of the sentence." Id. As the court concluded, "[m]aking a motion in limine that is based on lies and falsehoods, and then demanding and participating in an evidentiary hearing that reeks of prevarication, not only insults the judicial process, but also 'willfully . . . impede[s] . . . the administration of justice.'" Id. (quoting U.S.S.G. § 3C1.1) (emphasis added). Just so here, participating in a motion to sever by proffering a declaration that was "based on lies and falsehoods," which leads to a hearing that reinforces and relies on those falsehoods, not only insults the judicial process but constitutes an obstruction of justice.

However, this case presents unique considerations because Jensen did not herself sign the declaration, she merely proffered it in support of her motion to sever. The question thus arises whether Jensen may be held accountable when she did not personally make the false

20

statement. Jensen argues that there is no evidence she acted "willfully" – that is, with the purpose of impeding justice, see United States v. Lofton, 905 F.2d 1315, 1316-17 (9th Cir. 1990) – and that she should not bear responsibility for the acts of others. On both counts the Court disagrees.

As Jensen acknowledges, the Ninth Circuit has not resolved whether a defendant may be punished for proffering a false declaration filed by a third party. But other circuits have held that where, as here, the defendant sits idly by when materially false information – which the defendant knows to be false – is provided to a judge, it is appropriate to enhance for obstruction of justice. For example, in United States v. Owolabi, 69 F.3d 156 (7th Cir. 1995), a Nigerian citizen was charged with transporting counterfeit and forged securities. During a hearing before a magistrate judge, the defendant's attorney asserted that the defendant was a legal resident. Id. at 160. The sentencing judge concluded that because the defendant was not a legal resident, an enhancement for obstruction of justice was appropriate. On appeal, the defendant argued that he was silent during the hearing and that an enhancement would violate his Fifth Amendment rights. See id. at 162. The Seventh Circuit disagreed, concluding that the defendant had provided materially false information to the magistrate by acquiescing in and standing "idly by" as his attorney stated to the court on behalf of the defendant that he was a resident alien. Id. at 164. The court held that because "the defense attorney has been considered the defendant's mouthpiece and therefore able to speak on behalf of his client," "[a] defendant cannot stand idly by while he hears his attorney provide false information to the court. . . ." Id. (quotation omitted).

Other courts have similarly held § 3C1.1 apposite where the defendant permits her lawyer to proffer misleading or false information on her behalf. Thus, a defendant cannot sit idly by while her lawyer calls a witness whom the defendant knows will testify falsely, see United States v. Washington, 171 Fed. Appx. 986, 988 (4th Cir. 2006), while the lawyer presents a fraudulent document to the court, United States v. Welch, 2003 WL 22232798, *5 (N.D. Ill. 2003), or while the lawyer orally provides false information to the judge, see United States v. Stallings, 194 Fed. Appx. 827, 838 (11th Cir. 2006). All of these cases stand

for the proposition that "[b]ecause a lawyer acts as a defendant's agent, misleading presentations made through counsel (with the defendant's acquiescence) can be a basis for enhancing punishment even though the defendant was otherwise silent." United States v. Peterson, 37 Fed. Appx. 789, 791 (7th Cir. 2002).

Here, Jensen sat in court while her lawyer argued that Reyes' declaration provided "absolutely exculpatory" evidence that precluded the jury from convicting Jensen for backdating options. Jensen also sat idly by while her lawyer argued that there was no evidence Jensen actually knew that Reyes was backdating. See Order Granting Motion to Unseal, Exh. C at 5. But at the time, Jensen did know that Reyes had backdated, and therefore knew that Reyes' declaration was not "absolutely exculpatory." See Jensen FBI Form 302 at 3 (Jensen acknowledging that she knew Reyes was backdating options) (March 18, 2005).[7]

Because Jensen knew that Reyes' declaration was not accurate, the Court is also unpersuaded by her assertion that any obstruction was not willful. There can be no doubt that Jensen acted with the intent to mislead the Court because the Form 302 and the evidence proffered at trial both demonstrate that Jensen knew – at the time the Reyes declaration was proffered – that the declaration was not exculpatory. Jensen knew that Reyes backdated, but she nonetheless sat idly by while her lawyer represented to the court that a severance was justified because Reyes would testify otherwise. Put simply, that kind of conduct is not

---

[7] Jensen argues that her Form 302 is exculpatory because it demonstrates that she had already admitted to authorities that she knew of Reyes' backdating, the suggestion being that Jensen would not take one position with the FBI and another before the Court. It is true that because Jensen had already acknowledged that backdating occurred to the FBI, it would have been terribly risky to argue to the Court that Jensen did not know Reyes was backdating, provided that parties with access to the 302 had an opportunity to impugn the Reyes declaration. Of course, at the time, the Court had no way of knowing what Jensen had told authorities and the declaration was filed ex parte and sealed. Similarly, the government was excluded from the hearing on Jensen's motion. Thus, Jensen could offer the Reyes declaration, safe in the assurance that the United States Attorney could not contemporaneously challenge the veracity of Reyes' declaration.

If anything, the Form 302 is seriously damaging to Jensen's position. It conclusively demonstrates that when counsel argued that the Reyes declaration was absolutely exculpatory because it suggested that Jensen was unaware of Reyes' backdating, Jensen knew the Court was being misled. What is more, it demonstrates that Jensen's counsel – who was present at the FBI's interview – also had reason to know that Reyes' declaration was neither exculpatory nor accurate, as drafted.

permitted by § 3C1.1 because when a defendant's lawyer proffers misleading evidence to the court, which the defendant knows to be inaccurate, the failure to act can form the basis of an enhancement for obstruction.

CONCLUSION

Because Jensen has not carried her burden of proving that the No Knowledge Clause controls her sentence, the Court will impose a sentence with an eye towards – among other factors – the Sentencing Guidelines. See 18 U.S.C. § 3553(a). With a base offense level of six, plus two-level enhancements for abuse of trust and obstruction of justice, the Guidelines recommend a sentence of 6-12 months. Because the sentence falls within Zone B, the minimum term may be satisfied by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one month is satisfied by imprisonment. See U.S.S.G. § 5C1.1(c)(2).

**IT IS SO ORDERED.**

Dated: March 4, 2008

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE